**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**$84,740.00 CURRENCY, Defendant,**

**and**

**Doris Mae Potter, Administrator for Estate of Edwin Dumont Potter, Deceased, Claimant–Appellant.**

**No. 91–55651.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1992.

Decided Dec. 28, 1992.

John D. Vandevelde, Talcott, Lightfoot, Vandevelde, Woehrle & Sadowsky, Los Angeles, CA, for claimant-appellant.

Donna J. Everett, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: POOLE, FERNANDEZ, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

## OVERVIEW

Appellant Doris Mae Potter, as Administrator for the Estate of Edwin Dumont Potter ("Potter"), appeals the district court's order granting forfeiture judgment to Appellee United States Government ("Government"). Potter urges this court to apply the abatement doctrine to this 21 U.S.C. § 881(a)(6) forfeiture case. The Government argues that we lack jurisdiction because Potter's notice of appeal failed to specify she was appealing the district court's denial of her motion for abatement.

The district court had jurisdiction under 28 U.S.C. § 1345 and 28 U.S.C. § 1355. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and now affirm.

## BACKGROUND

On October 14, 1983, authorized agents of the Federal Bureau of Investigation executed a search warrant at the Potter residence. After finding evidence that Edwin Potter ("Edwin") was manufacturing illegal drugs in his workshop, they arrested him and seized $84,740 from the residence in connection with his illegal drug activity. On November 3, 1983, the Government filed a complaint seeking forfeiture of the currency in the United States District Court for the Central District of California pursuant to 21 U.S.C. § 881(a)(6). Because the Potters neither filed a claim to the money nor filed an answer, the district court entered a default judgment and the money was forfeited to the United States Treasury.

In February, 1984, Edwin was convicted for narcotics and firearms violations in the same United States District Court. Subsequently, Edwin was murdered pending the appeal of his criminal conviction. Pursuant to the abatement doctrine, the district court vacated the judgment and dismissed the indictment against Edwin. Mrs. Potter was appointed administrator of Edwin's estate on May 13, 1985. She then filed a claim and moved to vacate the district court's earlier default judgment arguing that the district court lacked jurisdiction over the money because the Government had not properly verified the complaint. When the district court denied her motion she appealed to this court and we reversed, holding that the district court lacked jurisdiction over the seized money because the Government had failed to properly verify its complaint. *United States v. $84,740 United States Currency*, 900 F.2d 1402, 1406 (9th Cir.1990). We remanded and stated that the district court should dismiss without prejudice. *Id.*

Upon remand, the parties entered a stipulation allowing the forfeiture to continue under the original complaint and allowing Potter to file a claim, answer the complaint, and move to abate. On January 31, 1991, the district court entered an amended order denying Potter's motion to abate the forfeiture proceedings and ruling that because the motion involved a controlling question of law, it would stay the proceedings and allow Potter to file an interlocutory appeal. This court denied her petition requesting interlocutory appeal on March 13, 1991.

Finally, on April 30, 1991, the district court entered a stipulated judgment forfeiting the property to the Government, but expressly reserving Potter's right to appeal the district court's order denying her abatement motion. Potter then filed this timely appeal on May 16, 1991.

## DISCUSSION

### A. *Jurisdiction*

We must first consider whether we have jurisdiction over this appeal. The Government contends that we lack jurisdiction because Potter failed to specify in her notice of appeal that she was appealing the abatement issue. We disagree.

█ Fed.R.App.P. 3(c) provides in pertinent part "[t]hat the notice of appeal ... shall designate the judgment, order or part thereof appealed from...." We have established a standard to determine whether an appellant has met the requirements of Rule 3(c): "[A] mistake in designating the judgment appealed from should not bar appeal as long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced or misled by the mistake." *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 451 (9th Cir.1983), *cert. denied*, 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984).

In a case similar to this one, we held that the plaintiffs' failure to designate the specific order appealed from does not preclude this court's review of the issues presented by that order. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1422–23 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). After defendants had removed the *Kruso* case, on April 23, 1986, the district court denied plaintiffs' motion for remand to state court and dismissed their complaint on improper joinder grounds. *Id.* at 1419–20. The plaintiffs filed a motion for reconsideration which the district court denied. *Id.* at 1420. In addition, they sought an emergency stay and appealed to this court which denied both remedies. *Id.* Finally, the district court granted the defendants' motion to dismiss and motion for summary

judgment on October 16, 1986. *Id.* Ultimately, the plaintiffs filed a notice of appeal appealing "all judgments and Orders entered in this case on October 16, 1986." *Id.*

As in the present case, the defendants in *Kruso* argued that this court lacked jurisdiction because the plaintiffs failed to specify that they were appealing the April 23, 1986, order denying the motion for remand. *Id.* at 1420–21. In holding that we did not lack jurisdiction, *Kruso* followed the *Mercedes Benz* test and incorporated a two-step analysis to determine whether the appellant had intent to appeal and whether the defendants were prejudiced by the appeal: (1) whether the defendants had notice of the issue on appeal; and, (2) whether they had an opportunity to fully brief the issue. *Id.* at 1422–23. The fact that the defendants' brief contained a thorough presentation of all issues in dispute, including the order denying remand, convinced us that we had jurisdiction to review the denied motion for remand. *Id.* at 1423.

█ Similarly, in this case, we have jurisdiction to review the district court's denial of Potter's motion for abatement even though she failed to specify in her notice of appeal that she was appealing that denial. First, the Government had notice of Potter's intent to argue the abatement issue on appeal because her entire brief addresses that issue. Further, she preserved the right to appeal the abatement issue in the stipulated judgment which stated that "[c]laimant waives her right to trial in this matter. However, she reserves her right to appeal the United States District Court's Order Denying Motion to Abate Forfeiture Proceedings entered January 31, 1991."

Second, the Government cannot claim prejudice as a result of our decision because it fully briefed that issue. *See McCarthy v. Mayo*, 827 F.2d 1310, 1314 (9th Cir.1987) (finding no prejudice where appellees fully briefed the issues). Therefore, we have jurisdiction to reach the abatement issue.

## B. *Abatement*

Potter contends that 21 U.S.C. § 881 is a penal statute, and therefore forfeiture proceedings must abate upon the death of the wrongdoer. We disagree.

█ Whether the abatement doctrine applies to a forfeiture proceeding under 21 U.S.C. § 881(a)(6)[1] is an issue of first impression in this Circuit and is a question of law we review *de novo*. *See Anderson v. United States*, 966 F.2d 487, 489 (9th Cir. 1992). We hold that because 21 U.S.C. § 881 is primarily civil in nature, the abatement doctrine does not apply to the forfeiture proceeding in this case.

"It is a well-settled rule that actions upon penal statutes do not survive the death of the wrongdoer." *United States v. Oberlin*, 718 F.2d 894, 896 (9th Cir.1983). The death of a criminal defendant "pending appeal of a criminal conviction abates not only the appeal but all proceedings in the prosecution from its inception." *Id.* at 895. If the sentence includes a fine, the abatement doctrine prevents recovery from the estate. *Id.* However, an action only abates if the underlying statute upon which it is based is penal in nature. *See id.* at 896; *Case of One 1985 Nissan, 300ZX, VIN: JN1C214SFX069854*, 889 F.2d 1317, 1319 (4th Cir.1989) ("whether forfeiture under § 881(a)(6) abates on death of the property owner depends on whether the provision is primarily civil or penal in nature"). Therefore, we must examine the statute to determine whether it is penal or civil in nature.

█ In determining whether § 881(a)(6) is primarily civil or penal, we engage in a two-step analysis. *United States v. Ward*, 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641–42, 65 L.Ed.2d 742 (1980). First, we focus upon whether Congress expressly or impliedly indicated a preference for either a civil or criminal label; and second, where Congress did intend to establish a civil penalty, we decide whether the scheme is so punitive either in purpose or effect as to negate that intention. *Id.* Several factors guide

us in this inquiry, including: (1) whether the sanction has been historically considered punitive; (2) whether it applies only after a finding of *scienter;* and (3) whether it promotes the retribution and deterrence goals of punishment. *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963).

We hold that § 881(a)(6) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("Act"), 21 U.S.C. §§ 801–966, is primarily civil in nature. The Second and Fourth Circuits have similarly held that § 881(a)(6) is civil in nature. *One 1985 Nissan*, 889 F.2d at 1319; *United States v. $2,500 in United States Currency*, 689 F.2d 10, 13 (2d Cir.1982), *cert. denied*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984). Furthermore, the Fourth Circuit reached the same conclusion we reach here, holding that because § 881(a)(6) is primarily civil in nature, "forfeitures under this statute do not abate on the death of the property's owner." *One 1985 Nissan*, 889 F.2d at 1319.

Historically, forfeitures have been regarded as civil in nature. *$2,500 in United States Currency*, 689 F.2d at 14 (citing *United States v. Regan*, 232 U.S. 37, 34 S.Ct. 213, 58 L.Ed. 494 (1914)). As the Second Circuit noted, the Act reflects Congress's intent to make § 881(a)(6) civil: "Congress indicated both expressly and impliedly a preference for the civil label." *Id.* at 13 (quotations omitted). Congress made a clear distinction between criminal "Offenses and Penalties" in §§ 841–852 and "Administrative and Enforcement Provisions" (including forfeiture) in §§ 871–886. *Id.* This division reflects Congress' intent to make § 881(a)(6) primarily civil.

Moreover, we agree with the Second Circuit and do "not find 'the clearest proof' that the forfeiture involved here is so punitive in purpose as to override Congress' intention to enact a civil penalty." *Id.* The Act itself reflects its remedial purpose. For example, it provides that "[t]he illegal

---

**1.** Section 881(a)(6) provides for forfeiture of "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or in-

tended to be furnished by any person in exchange for controlled substance in violation of this subchapter...." 21 U.S.C. § 881(a)(6).

importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people." 21 U.S.C. § 801(2). Part E of the Act dealing with administration and enforcement authorizes the Attorney General to carry out "studies or special projects designed to compare the deterrent effects of various enforcement strategies on drug use and abuse...." 21 U.S.C. § 872(a)(2).[2] Additional remedial purposes of the forfeiture statute include "impeding the success of the criminal enterprise by eliminating its resources and instrumentalities, diminishing the efficiency and profitability of the business by increasing the costs and risks associated with it, and helping to finance the government's efforts to combat drug trafficking." *$2,500 in United States Currency*, 689 F.2d at 13; *United States v. Santoro*, 866 F.2d 1538, 1544 (4th Cir.1989) (listing same remedial purposes of § 881(a)(7)).

In *United States v. One 1985 Mercedes*, we considered the nature of civil forfeiture statutes and held "[c]ivil forfeiture actions constitute a hybrid procedure of mixed civil and criminal law elements. Sometimes referred to as 'quasi-criminal' actions, civil forfeitures are *in rem* proceedings in which the 'guilt' at issue is the 'guilt' of the property seized." *United States v. One 1985 Mercedes*, 917 F.2d 415, 419 (9th Cir. 1990). *One 1985 Mercedes* involved a § 881(a)(4)[3] forfeiture proceeding. In that case, we recognized there are constitutional criminal law protections to protect owner-claimants and noted two criminal law protections which apply in civil forfeitures: the Fourth Amendment exclusionary rule and the Fifth Amendment protection against self-incrimination. *One 1985 Mercedes*, 917 F.2d at 419 (citing *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702, 85 S.Ct. 1246, 1251, 14

L.Ed.2d 170 (1965) and *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886)).

We stated that "[f]orfeiture statutes are 'civil' for the purposes of the double jeopardy clause, ... are 'not criminal enough' to prevent the claimant from carrying the burden of proof, ... and the Federal Rules of Criminal Procedure do not, by their express terms, apply to civil forfeitures." *Id.* (citations omitted). Moreover, we noted that the due process requirements in civil forfeitures are not as strict and do not require an immediate post-deprivation hearing in the absence of unreasonable delay in judicial review. *Id.* at 420. In a civil forfeiture, the focus is on the claimant's property and not on the defendant:

> In drug-related forfeitures, the "guilt" issue to be determined is whether the seized property is connected with illicit drug activity. The owner-claimant is neither defendant nor plaintiff, but an intervenor who seeks to defend his or her right to the property against the government's claim. Indeed, the guilt or innocence of the owner-claimant is largely irrelevant.... The owner-claimant thus stands in an essentially civil litigation position in the civil forfeiture proceeding.

*Id.* at 419. When the issue is forfeiture of the "guilty" property, as in the present case, the action is civil.

We reject Potter's contention that our decision in *Oberlin* governs the disposition of this case. *Oberlin* is distinguishable because it allowed abatement of a *criminal* forfeiture proceeding under 21 U.S.C. § 848, as opposed to the *civil* forfeiture proceeding at issue in this case. *See Oberlin*, 718 F.2d at 896. Furthermore, *Oberlin* recognized this distinction, noting that the defendant's criminal conviction and the criminal forfeiture were intended as a penalty, and thus abated. *Id.*

Potter also argues that the Supreme Court's decision in *Shaffer v. Heitner*, 433

---

2. The Act outlines other remedial purposes, including authorization for the Attorney General to carry out "educational and training programs on drug abuse and controlled substances law enforcement for local, State, and Federal personnel...." 21 U.S.C. § 872(a)(1).

3. Section 881(a)(4) provides for forfeiture of "all conveyances, including aircraft, vehicles, or vessels ..." used in drug trafficking. 21 U.S.C. § 881(a)(4).

U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), eliminates the distinction between *in rem* and *in personam* proceedings such that those labels can no longer be the basis for distinguishing civil and criminal forfeiture proceedings. Thus, she contends, *Shaffer* calls into question the validity of *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 676–79, 94 S.Ct. 2080, 2088–90, 40 L.Ed.2d 452 (1974) (holding a Puerto Rican forfeiture statute modeled after § 881(a) which did not provide for pre-seizure notice and hearing did not deny appellant due process). *Shaffer* is distinguishable from *Calero–Toledo*. In *Shaffer*, the Court rejected the concept that a state court could obtain personal jurisdiction over a defendant based merely upon the presence of property in that jurisdiction when the defendant has no other contact other than with the state. *Shaffer*, 433 U.S. at 211–12, 97 S.Ct. at 2583–84. *Calero-Toledo* involved the Government's right to seize property pursuant to a forfeiture statute.

Therefore, because the abatement doctrine protects the criminal defendant, it does not apply when the action involves a civil forfeiture of the claimant's property.

C. *Relation Back*

 We also find that the relation back provision in § 881(h) [4] operates to vest title of the property in the Government upon commission of the crime: "[a]ll right, title, and interest in the property vested in the government upon commission of the act giving rise to forfeiture." *United States v. $5,644,540 in United States Currency*, 799 F.2d 1357, 1364 (9th Cir.1986). In the present case, relation back occurred, thereby vesting title to the money in the Government at the time Edwin committed the crime which gave rise to the forfeiture. Therefore, at the time of Edwin's death, he did not have title to the property and his estate and heirs cannot now obtain title through him. *One 1985 Nissan*, 889 F.2d at 1319.

The judgment of the district court is AFFIRMED.

---

**4.** Section 881(h) provides that "[a]ll right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 881(h) (West Supp.1992).